# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DWAYNE LUMAR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-13373** |
| **MONSANTO COMPANY** | **CHIEF MAGISTRATE JUDGE KAREN WELLS ROBY** |

## ORDER AND REASONS

Before the Court on consent of the parties under the authority of 28 U.S.C. § 636(c) is a

**Motion for Summary Judgment (Rec. Doc. No. 41)** filed by the defendant, Monsanto Company

("defendant" or "Monsanto") seeking judgment as a matter of law to dismiss the plaintiff's claims

of race discrimination or harassment in violation of Title VII of the Civil Rights Act of 1964 as

codified in 42 U.S.C. § 2000e *et seq.* ("Title VII"), disability discrimination or harassment in

violation of the amended Americans with Disabilities Act ("ADA") codified at 42 U.S.C. § 12101,

*et seq.*, and hostile work environment related to these violations. The plaintiff filed an opposition

and supplemental opposition to the motion. Rec. Doc. Nos. 47, 54. Monsanto replied to plaintiff's

opposition. Rec. Doc. No. 57. The motion was submitted on the briefs.

## I.    Factual and Procedural Background

The plaintiff, Dwayne Lumar ("plaintiff" or "Lumar"), an African American male who

works for the defendant, Monsanto as a Senior Production Technician struggled with his weight

all of his life.[1] In March 2013, he was offered employment by Monsanto to work as a Production

---

The following facts are derived from the defendant's Statement of Uncontested Facts with specific supporting exhibits referenced throughout. The plaintiff did not file a statement contradicting the defendant's Statement of Uncontested Facts or setting forth the contested issues of fact as required by Local Rule 56.2. For this reason and the lack of competent summary judgment evidence opposing the motion, as outlined later in this Order, the facts presented in the defendant's statement are deemed admitted for purposes of resolving this motion. Id.; see also, Fed. R. Civ. P. art. 56(e)(2); see *First NBC Bank v. Kirsch*, No. 16-4352, 2018 WL 5024074, at *1 n.1 (E.D. La. Oct. 17, 2018).[1]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 20-22 (Lumar Depo. at pp. 41-43). In 2013, prior to his employment, Lumar was attempting to lose weight into the 300's (pounds) on his own and was happy and felt better when he lost weight. Rec.

Technician after being interviewed and completing a physical assessment.[2]  Shloe Jeffery (an African-American and head of Human Resources at the plant), Dana Parker (a Caucasian and Human Resource Generalist), and Frank Piascik (a Caucasian who became plaintiff's supervisor), each played a role in plaintiff's interview process and/or hiring.[3]

After accepting the offer, Lumar underwent a physical examination in Monsanto's medical department during which his weight was measured which was not communicated to Human Resources.[4]  After the physical examination, Lumar began working in the position for a 120-day period in which his performance was being evaluated which included both physical and written tasks.[5]  As a Production Technician in GI Dry Unloading, Lumar is required to wear personal protective equipment ("PPE"), climb portable ladders, and use a safety harness to perform certain job duties.[6]  At the time, plaintiff weighed approximately 465 pounds.[7]

Shloe Jeffery, the Human Resources Lead that oversees the Human Resources Operations at the Luling location of Monsanto indicated that the employees involved in making the decision were not aware of Lumar's weight.  Jeffery later disclosed Lumar's weight after safety concerns were raised during the 120-day qualification process regarding the weight ratings for the

---

Doc. No. 41-3 (Def. Exhibit A), pp. 2-3, 22-24, 25-27, 29 (Lumar Deposition at pp. 20-21, 43-45, 46-48, 50) & pp. 97, 106 (Deposition Exhibits 1, 3).

[2]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 33-35 (Lumar Deposition at pp. 74-76).

[3]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 4, 14, 33 (Lumar Deposition at pp. 23, 34, 74).

[4]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 35, 47 (Lumar Deposition at pp. 76, 88); Rec. Doc. No. 41-5, p. 4 (Jeffery Declaration p. 4).

[5]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 27, 39, 48 (Lumar Deposition at pp. 48, 80, 89); Rec. Doc. No. 41-5, pp. 5-7, 8-10 (Jeffery Declaration, Exhibits C-1 and C-2); Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 39-40 (Lumar Deposition at pp. 80-81)..

[6]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 32, 40-44 (Lumar Deposition at pp. 73, 81-85).

[7]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 18-19, 45 (Lumar Deposition at pp. 39-40, 86).

equipment that Lumar was required to use to complete the process.[8]   In late June- early July 2013, Piascik inquired about the allowable rung loading that the existing structural ladder could handle. He consulted with Frederick Osterloh, a contractor who advised that the rungs can handle the suggested loading of 400lbs. [9]

In August 2013, at the end of the qualification period, Lumar was advised that he did not meet 20 percent of the job's requirements due to his weight of 474 lbs, which exceeded the safety weight ratings for the tank ladders.[10]   Lumar was thereafter told that in order to qualify for the job he would have to lose weight.  There was no suggestion of how he should lose the weight, but he wanted to know how much weight he had to lose in order to qualify for the job.[11]  Lumar  testified that he was given options on how to lose weight, which included diet and weight loss surgery.[12]  Lumar did not feel pressured or required to undergo the surgical procedure recommended by Monsanto.[13] He thought that it was just a list of possible options.[14]

Lumar understood that he could have been fired for not meeting the qualifications. [15]  However, instead of terminating him, Monsanto gave Lumar an additional two months to lose weight. [16] Monsanto also continued to pay his salary during the entire extended period.[17]  During

---

[8]Rec. Doc. No. 41-5, pp. 11-12, 13-14 (Jeffery Declaration, Exhibits C-3 and C-4).

[9] Rec. doc. 41-5, (Def. Exhibit C-3, P. 11 of 53.

[10]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 49, 52-53, 54-55, 57, 83 (Lumar Deposition at pp. 90, 94-95, 96-97, 99, 126).

[11]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 86 (Lumar Deposition at pp. 152).

[12] Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 87 (Lumar Deposition at pp. 153).

[13] Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 88 (Lumar Deposition at pp. 154).

[14]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 5, 16-17, 18, 54, 84, 85 (Lumar Deposition at pp. 25, 37-38, 39, 96, 127, 128).

[15] Rec. Doc. No. 41-3 (Def. Exhibit A), pp/ 57 of 114 ( Lumar Deposition at p. 99)

[16] Id.

[17]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 53, 57-58, 59, 94 (Lumar Deposition at pp. 95, 99-100, 101, 164).

this "extended qualification period," Lumar was in contact with the on-site nurse, Nancy Miller, who provided dietary tips and other suggestions for weight loss including advising him that he could join Weight Watchers.[18] After the meetings with Ms. Miller he loss some weight and worked with Weight Watchers. However as of October 30, 2013 he was still well over 400 lbs in excess of the load limit of the ladders.[19]

Lumar met with Parker and Piascik in September 2013 to discuss his weight loss progress.[20] At the end of the extended qualifying period in October 2013, plaintiff still weighed over 400 pounds.[21] Again, rather than terminate Lumar, Monsanto gave him an additional six months for continued weight loss.[22]

Monsanto assisted Lumar with applying for short-term disability, which was approved by its third-party benefits administrator at the end of October 2013.[23] Lumar was given six months off of work to dedicate time to lose weight and get healthy and was paid his full salary.[24]

While on leave, Lumar ultimately opted to undergo a gastric surgery to lose weight.[25] To have the surgery, among other requirements, Lumar met with his surgeon, Dr. Redman, to discuss the procedure and matters of consent and with a psychologist, Dr. Wolfson, to prepare for the

---

[18]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 58, 85 (Lumar Deposition at pp. 100, 128).

[19]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 58 (Lumar Deposition at p. 100).

[20]Rec. Doc. No. 41-3 (Def. Exhibit A), p. 81, 83 (Lumar Deposition at pp. 124, 126).

[21]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 58, 81 (Lumar Deposition at pp. 100, 124).

[22]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 59 (Lumar Deposition at pp. 101).

[23]*Id.*

[24]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 60, 94-95 (Lumar Deposition at p.101, 102, 164-165).

[25]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 60, 89 (Lumar Deposition at pp. 102, 157).

surgery.[26]  Plaintiff told Dr. Wolfson he would be satisfied to get to 300 pounds.[27]  Lumar's wife supported him having the procedure to lose weight and get healthier, and she herself had the same surgery by the same doctor a few months later.[28]

Lumar had the surgery in March 2014 and lost significant weight, ultimately getting down to 350 pounds.[29]  Because he achieved a weight under 400 pounds, he was released to return to work after eight months on April 29, 2014 and went through the qualification process again under Piascik's supervision.[30]  Lumar eventually qualified for the Production Technician position and received a pay raise for successfully completing the qualification process in or around September 2014.[31]  Monsanto also ordered new coveralls for Lumar to fit due to his size change after the weight loss.[32]

Since qualifying for his position, Lumar has been promoted from Trainee to Qualified Technician to Technician I to Technician II and to Senior Technician, which is the highest level and maximum pay for a Production Technician.[33]  He has received "Strong" or "Very Strong" on

---

[26]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 60-61, 63, 65, 66 (Lumar Deposition at pp. 105, 107, 108).

[27]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 64-65 (Lumar Deposition at pp. 106-107).

[28]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 60-61 (Lumar Deposition at pp. 102-103).

[29]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 29, 61-62, 66, 89 (Lumar Deposition at pp. 50, 103-104, 108, 157).

[30]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 62-63, 67 (Lumar Deposition at pp. 104-105, 110); Rec. Doc. No. 41-5, pp. 16-18 (Jeffery Declaration, Exhibit C-6).

[31]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 62, 67, 69-70 (Lumar Deposition at pp. 104, 110, 112-113), p. 110 (Deposition Exhibit 5).

[32]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 67-69 (Lumar Deposition at pp. 110-112), p. 109 (Deposition Exhibit 4).

[33]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 72-73 (Lumar Deposition at pp. 115-116), Rec. Doc. No. 41-5, pp. 21 (Jeffery Declaration, Exhibit C-8).

all performance reviews since 2014, including two by Piascik.[34] Piascik also was his supervisor when he first qualified and when he was promoted each time through the Technician II level.[35] Lumar also has had no issues with his other supervisors after Piascik, who were Kenneth Waldrop and Jeffery Billings.[36]

In July 2014, Monsanto re-emphasized the importance of safety in the plant and instructed all leaders to provide all employees with important safety education to increase awareness regarding the safe use of equipment, including being fully aware that personnel exceeding the equipment weight ratings may not be able to safely perform aspects of their job.[37] All employees received notice of the 300 pound weight rating for some equipment, including ladders and fall protection devices. Monsanto further instructed anyone over that weight to immediately notify managers, medical personal, human resources or safety officers to review for reasonable accommodations.[38] Weight notifications were added to the annual physical exams and new candidates for employment were notified of weight limits for the equipment.[39]

Since he reached his qualifying position, Lumar has regained the weight and now weighs over 400 pounds again.[40] Lumar's weight has not affected any major life activities or his ability

---

[34]Rec. Doc. No. 41-5, pp. 22-46 (Jeffery Declaration, Exhibits C-9 through C-13).

[35]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 39, 62-63, 70, 73-74, 92-93 (Lumar Deposition at pp. 80, 104-105, 113, 116-117, 161-62), p. 111 (Deposition Exhibit 6); Rec. Doc. No. 57-1, p. 1 (Piascik Declaration).

[36]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 75-77 (Lumar Deposition at pp. 118-120).

[37]Rec. Doc. No. 41-5, pp. 19-20 (Jeffery Declaration, Exhibit C-7).

[38]*Id.*

[39]*Id.*

[40]Rec. Doc. No. 41-3 (Def. Exhibit A), p. 3 (Lumar Deposition at p. 21).

to work.[41]  At work, he is only restricted from performing tasks that require him to use equipment not rated for his weight, which he acknowledges would be dangerous and a threat to his safety.[42]

Lumar is still employed at Monsanto in the job of Senior Production Technician in the GI dry unloading department, and he has had no adverse employment actions taken against him.[43] Lumar has never requested to change positions or "bid out" to, i.e. apply for, another open position in any department at the Monsanto plant.[44]

According to Lumar  he was treated less favorably than all "[e]mployees, period," without distinction of race, and "[a]ny employee" whether black or white who was over 400 pounds and not required to go on medical leave to lose weight.[45]  Lumar contends that three other overweight employees (one of whom is African American) were not required to lose weight, or go on short term disability to do so.  As a result, he contends that he was treated differently.

## II.    **The Motion**

Monsanto asserts that it is entitled to summary judgment based on the uncontested facts deemed admitted by the plaintiff and seeks to strike plaintiff's improperly filed and inadmissible evidence.[46]  Monsanto contends that: (1) plaintiff has not alleged or established any underlying psychological disorder as a cause for his obesity as required by the ADA and  therefore cannot

---

[41]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 18-20 (Lumar Deposition at pp. 39-41).

[42]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 47-48, 71 (Lumar Deposition at p. 88-89, 114).

[43]Rec. Doc. No. 41-3 (Def. Exhibit A), p. 30 (Lumar Deposition at p. 52).

[44]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 77-78 (Lumar Deposition at pp. 120-121).

[45]Rec. Doc. No. 41-3 (Def. Exhibit A), pp. 8, 10 (Lumar Deposition at pp. 28, 30).

[46]*Id*., Rec. Doc. No. 57.

establish any discrimination or harassment under the ADA; and (2) that he has not made a prima facie case of race or disability discrimination.

Monsanto also argues that Lumar cannot now claim that it regarded him as disabled because he did not submit the claim for administrative review with the EEOC.[47] Monsanto further contends that Lumar has failed to identify any employee, white or black, that was treated more favorably; namely no Production Technicians with the same supervisors, training, or job duties and Lumar has failed to present proof of their weights during qualifying or currently.

Lumar opposes the motion. He contends that: (1) morbid obesity is considered a disability under the ADA and that no proof of a related psychological condition is required; and (2) Monsanto regarded him as obese, therefore should be liable.

Lumar, supporting his regarded as disabled argument contends that: (1) climbing stationary ladders at the plant are not an essential daily function of his job; (2) they posed no difficulty for him; and (3) were only used about ten times a year. In fact, Lumar contends that he could climb ladders without need for accommodations by Monsanto and yet, he was required to lose weight or be fired, which created a hostile work environment.

## III.    Standard of Review for Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if resolving that fact in favor of one party could affect the

---

[47]*Id.*

outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). In such a case the moving party must "establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip, LLC v. United Healthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011). Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson*, 477 U.S. at 252.

Once the moving party has made its showing, the burden shifts to the non-moving party to produce competent evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson*, 477 U.S. at 255. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002)); *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated

assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment."); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment).

A plaintiff's mere subjective beliefs fail to establish that a material fact issue is in dispute. *Chambers v. Sears Roebuck & Co.*, 428 F. App'x. 400, 419 n.54 (5th Cir. 2011); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 (5th Cir. 2009); *Strong v. Univ. Health Care Sys., LLC*, 482 F.3d 802, 807 (5th Cir. 2007); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004).  Though the Court may not evaluate evidence on a motion for summary judgment, the Court may determine the "caliber or quantity" of evidence as part of its determination whether sufficient evidence exists for the fact-finder to find for the non-moving party.  *Anderson*, 477 U.S. at 254.

Moreover, the summary judgment standard in an employment discrimination matter under Title VII and the ADA is premised upon a burden-shifting analysis from *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.  Thereunder, the Court must first determine if the plaintiff has established a *prima facie* case of discrimination, sufficient to raise an inference of discrimination.  *McDonnell-Douglas*, 411 U.S. at 802; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (finding that in Title VII actions, a *prima facie* standard is used for evidentiary purposes on summary judgment); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir.2009) (*McDonnell-Douglas* burden-shifting framework applies to ADA claims on summary judgment); *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 285 (5th Cir. 1986) ("The *McDonnell-Douglas* formula . . . is applicable . . . in a . . . summary judgment situation.").

"Establishment of a *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (citing *Burdine*, 450 U.S. at 248). "The facts necessarily will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not necessarily applicable in every respect to different factual situations." *McDonnell-Douglas*, 411 U.S. at 802 n.13.

"There is no doubt that vague or conclusory allegations of discrimination or harassment are not enough to survive summary judgment." *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998). "Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); *accord Duron v. Albertson's LLC*, 560 F.3d 288, 291 (5th Cir. 2009).

## IV.    <u>Challenge to Evidence</u>

Before considering the substance of the motion, the Court will consider Monsanto's contention that exhibits 1 and 7 should be disregarded, Exhibit 1 is the 365-page investigative file of the Employment Equal Opportunity Commission Investigative (EEOC). Monsanto contends that the EEOC investigative file contains hearsay statements regarding the attempt to conciliate the claim; it is inadmissible summary judgment evidence. Monsanto also contends that Exhibit

7, the EEOC determination letter, while it can be admissible that the Court is not bound by the determination. Rec. doc. 57.

Additionally, Monsanto contends that Exhibits 3, 6, 9 and 10, and the majority of Exhibits 13-15, the deposition transcripts of Piascik, Jeffery and Parker should be disregarded by the Court because the plaintiffs brief fails to cite to them. Monsanto suggests that because Lumar filed the deposition transcripts of Piascik, Jeffery and Parker indiscriminately, that the Court should disregard any part of the testimony not specifically cited too.

Finally, Monsanto contends that the Court should disregard two unsigned declarations of Lumars coworkers; Cardell Sandoph and Craig Duronselt because they lack foundation, are speculative, hearsay and not based upon personal knowledge. While Lumar filed a supplemental memo in response to Monsanto's motion, he did not address the adequacy of the evidence submitted in response to the motion.

To be entitled to consideration on summary judgment, the evidence supporting the facts set forth by the parties must be such as would be admissible in evidence at trial. See FED. R. CIV. P. 56(c); see also *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993 ) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the

plaintiff has proffered sufficient proof in the form of admissible evidence that could carry the burden of proof in his claim at trial.")

1. **EEOC Investigative File**

The first form of evidence submitted by Lumar is the EEOC's investigative file. However, the Fifth Circuit has made clear that unsworn contents of an EEOC's investigation file do not meet the requirements of Rule 56(c). *Cruz v. Aramark Servs., Inc*., 213 F. App'x 329, 332-33 (5th Cir. 2007) ("[W]hile the EEOC report may fall within the business records hearsay exception, the same cannot be said of the entire EEOC file. The business records hearsay exception applies to the EEOC's report and determination, but it does not apply to the underlying material collected during the EEOC investigation."). In addition, documents in the EEOC file are not admissible absent an independent hearsay exception. Fed. R. Evid. 803(8)(A)(iii) (delineating a hearsay exception for the "factual findings from a legally authorized investigation"); *McClure v. Mexia Indep. Sch. Dist*., 750 F.2d 396, 400 (5th Cir. 1985) ("EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings . . . However, neither under the [circuit] precedents nor under Rule [803(8)(A)(iii) ] is the entire EEOC file admissible"); see also *Aramark Servs., Inc.,* 213 F. App'x at 332 (requiring that inadmissible EEOC statements and documents satisfy a hearsay exception). Therefore while some aspects of the EEOC file may be admissible and subject to review, only sworn statements and the actual EEOC determination letter, Exhibit (7) are admissible. Therefore, Monsanto's request to strike Exhibit 1 in its entirety

is denied.   To the extent there are any sworn statements, they are admissible.   Additionally, the EEOC letter is admissible, although not binding.

## 2.   **Deposition Testimony Not Cited.**

Monsanto also seeks to strike the indiscriminately cited depositions of  Piascik, Jeffery and Parker.  Monsanto suggests that the Court should only consider the deposition excerpts cited in the plaintiff's supporting memorandum and points out that Monsanto only cited to three pages of Jeffery's deposition and one page of Parker's deposition.

FRCP Rule 56 (c) (3) provides that "the court need consider only the cited materials."   It does not impose upon the district court a duty to sift through the record in search of evidence to to support a party's opposition to summary judgment.   *Jackson v. Cal-Western Pacaging Corp.,* 602 F. 3d 374, 379-80 (5th Cir. 2010).   The Court further held that when evidence exists in the summary judgment record, but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.   *See  Malacara v. Garber,*  353 F. 3d 393, 405 (5ht Cir. 2003)

The evidence of record shows that Parker's deposition consists of 88 pages.   Jeffery's deposition is 72 pages and Piascik's deposition is 136 pages.   While the Court is under no duty to sift through the depositions of these witnesses, the supporting memoranda of the plaintiff makes specific reference to the page and line of the relevant testimony of Piascik and Jeffery.   However,

the degree to which Parker's deposition is attached but not referenced in the opposition, it will not be considered.

### 3. Unsigned Declarations

Next Monsanto challenges the declarations of Cardel Sandolph and Craig Duronselt. It contends that their declarations should be disregarded because they lack foundation, are speculative or otherwise not based upon personal knowledge. (Rec. doc. 57) Monsanto also points out that the declarations have typed names instead of handwritten signatures, which does not comply with 28 U.S.C. §1746. As a result, Monsanto contends that neither declaration is competent summary judgment evidence.

FRCP Rule 56 (c)(4) provides that an affidavit or declaration used to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters. There must be sufficient information within the affidavit or declaration to allow the court to conclude that the affiant's assertion is based upon personal knowledge. 5 Brumfield v. VGB, Inc. 2018 U.S. Dist. LEXIS 4405, at * ( E.D. La. Jan. 10, 2018); *Isquith v. Middle South Utitlities, inc.,* 847 F.2d 186, 194-95 (5th Cir. 1988)( summary judgment requires properly verified affidavits); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.* 20 F. Supp. 3d 519, 530 ( e. D. Pa. 2014).

In this case the affidavits clearly do not contain the proper signatures, and nor do they adequately explain how and why either Sandolph or Duronselet are competent to testify. Regarding the signatures, the affidavit only contains typed notations and not signatures. However, signatures are required to be handwritten and typed notations like the ones that are present on the declarations in this case are insufficient and therefore not competent summary judgment evidence.

*Brumfield* at 2.  There is also no evidence that qualifies them to make statements regarding the weight limits of the equipment, Lumar's job performance, retentions and work restrictions. Therefore, for these reasons, neither Sandolph's nor Duronselet's Declaration will be considered in this opinion.

### 4.  <u>Un-Authenticated & Irrelevant Emails Exhibits</u>

Monsanto contends that Exhibits 3, 6, 9 and 10 are not referenced in Lumar's opposition. As a result, it contends that the Court need not consider these materials.  Lumar makes no reference in his supplemental memorandum as to either the relevance or authenticity of these exhibits which consist of emails from Monsanto employees to Lumar regarding: (1) a link to the HR portal; (2) seeking ladder regulations; and (3) a request for Lumar to go to the medical department. Additionally, on the disc provided to the Court, there is no Exhibit 6 as indicated by Monsanto.

Before addressing the authenticity of the subject emails, or ESI, the Court notes that it is hard to understand how these relatively innocuous emails are relevant to Lumar's claim.  Even if they were somehow even tangentially relevant, they fail the hurdle of being authentic. For the subject emails to be considered, they should have been authenticated by an affidavit.  *Lorraine v. Markel American Ins. Co*., 241 F.R.D. 534 (D. Md. 2007) A party may not simply attach emails to its memorandum as Exhibits. Id.  Lumar's failure to clear the relevancy and authenticity hurdles renders the emails inadmissible and excluded from review in this motion.

### V.    <u>ADA Discrimination</u>

Monsanto contends that Lumar's obesity is not a disability.  It further contends that Lumar was not treated as disabled, and instead was provided unprecedented accommodations to allow

him an opportunity to reach a weight level that comported with the safety requirements of his job and equipment.

Lumar alleges that Monsanto violated the ADA when it discriminated against him because of his obesity when Monsanto forced him to: (1) undergo weight management; (2) weight loss efforts; and (3) prevented him from using certain equipment. He contends that these requirements were imposed even though he could complete his job duties and use the equipment.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability. . . ." 42 U.S.C. § 12112(a) (emphasis added). Under the ADA, a disability is defined "in relevant part as 'a physical or mental impairment that substantially limits one or more major life activities of such individual.' An impairment is substantial if it 'substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.'" *Lanier v. Univ. of Tex. Southwestern Med. Ctr.*, 527 F. App'x 312, 318 (5th Cir. 2013) (quoting 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(20)(B); 29 C.F.R. § 1630.2(j)(1)(ii)). "Major life activities include 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Kemp v. Holder*, 610 F.3d 231, 234-35 (5th Cir. 2010) (quoting 42 U.S.C. § 12102(2)(A)). "A plaintiff can establish that he is 'qualified' by showing that 'either (1) [he] could perform the essential functions of the job in spite of [his] disability,' or '(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job.'" *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (quoting *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)).

When a plaintiff asserts discrimination under the ADA where there is no direct proof thereof, the Court applies a version of the burden-shifting framework established by the United States Supreme Court for Title VII claims in *McDonnell-Douglas*, 411 U.S. at 792. As to plaintiff's ADA discrimination claims, the Fifth Circuit first requires plaintiff to establish a *prima facie* case of discrimination by proving: "'(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision <u>on account of his disability</u>.'" *LHC Group, Inc.*, 773 F.3d at 697 (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)) (brackets in original) (emphasis added).

An employer who knows of a qualified person's disability and its consequential limitations must make "reasonable accommodations." *Feist v. La. Dep't of Justice*, 730 F.3d 450, 452 (5th Cir. 2013). Thus, discrimination based on disability includes an employer's failure to make those "reasonable accommodations . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship [on the operation of its business]." 42 U.S.C. § 12112(b)(5)(A).

If a plaintiff makes a *prima facie* showing, a presumption of discrimination arises, and the burden shifts to the employer to "articulate a legitimate non-discriminatory reason for the adverse employment action." *Chevron Phillips Chem. Co., LP*, 570 F.3d at 615. At that point, the burden shifts back to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual. *See Id.*; *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016).

Lumar bases his claims on the assertion that his morbid obesity is a qualifying disability under the ADA. The first step in establishing a *prima facie* case of discrimination is for the plaintiff to prove that he suffers from a disability. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th

Cir. 1999).  The ADA provides three alternative definitions for the term "disability" at 42 U.S.C. § 12102(1):

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

*See also*, 29 C.F.R. § 1630.2(g)(1).[48]

The federal courts are split as to whether obesity, on its own, can qualify as a disability under the ADA.  Prior to the ADA Amendments Act of 2008 ("ADAAA"), the EEOC's guidelines stated that except in "rare circumstances," obesity was not considered a disabling impairment.  *See Watters v. Montgomery Cty. Emer. Comm. Dist.*, 129 F.3d 610, 1997 WL 681143, at *1 (5th Cir. Oct. 13, 1997) (Table, Text in Westlaw) (citing 29 C.F.R. § 1630.2(j)); *Melson v. Chetofield*, No. 08-3683, 2009 WL 537457, at *3 (E.D. La. Mar. 4, 2009).  Several courts found that obesity constituted a disability only if it was the result of a physiological condition.  *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1112-113 (8th Cir. 2016); *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 440-443 (6th Cir. 2006); *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997).

 However, the ADAAA significantly expanded the meaning of "substantially limits" and "major life activities" leading some courts to resolve that morbid obesity alone was sufficient to establish an impairment.  After the amendments, the EEOC's compliance manual stated that "being overweight, in and of itself, is not generally an impairment . . . .

---

[48]The ADA provisions also define "impairment" in relevant part as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine."  29 C.F.R. § 1630.2(h)(1).

On the other hand, severe obesity, which has been defined as body weight more than 100% over the norm, is clearly an impairment." *EEOC v. Res. for Human Dev., Inc.*, 827 F. Supp.2d 688, 694 (E.D. La. 2011) (citing EEOC Compliance Manual, § 902.2(c)(5)(ii)); *McCollum v. Livingston*, No. 14-3253, 2017 WL 608665, at *35 (S.D. Tex. Feb. 3, 2017) (finding plaintiff a qualified individual under the ADA based solely on his morbid obesity).

In this case, the parties do not contest that Lumar is morbidly obese. Even assuming under the foregoing precedent that Lumar's obesity constitutes an impairment under the ADA, the plaintiff must still prove that his obesity "substantially limits a major life activity" to qualify under the ADA. *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 190 (5th Cir. 1996). "Neither the Supreme Court nor [the Fifth Circuit] has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies." *Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 223 (5th Cir. 2011). Thus, standing alone, the diagnosis of a condition such as morbid obesity is insufficient to trigger the protections of the ADA when it does not limit life activities or work. *Accord Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 91 (5th Cir. 1996). Instead, to determine whether an impairment is substantially limiting under the ADA to be a disability the Court must consider "(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment, and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (citation omitted).

As the parties concede, Lumar's obesity has been a life-long condition. However, the uncontested facts before the Court reflect that Lumar denies that his obesity limits his major life

activities and do not prevent him from doing the tasks he was assigned at Monsanto, including climbing the stationary ladders and use of the other equipment. It is fundamental under the ADA itself that a disability be one that substantially limits major life activities. Under the ADA, a "substantial impairment" is one that limits an individual's ability to perform a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii); *Sechler v. Modular Space Corp.*, No. 10-5177, 2012 WL 1355586, at *10 (S.D. Tex. Apr. 18, 2012). No where in the complaint and records before the Court has plaintiff alleged or established that he is unable or limited in ability to complete any of major life activities because of his obesity. To the contrary, plaintiff adamantly argues that he can function in life, to climb and work at Monsanto, and essentially has no debilitating physical side effects from his weight.

Lumar insists (and therefore does not contest) that he suffers no impairment from a disability as defined in the ADA because of his obesity in that his obesity does not impact his life or work functions. He also contends that he can do his job and climb the ladders Monsanto prevented him from using. These undisputed facts take Lumar outside of the ADA definitions from which he seeks protection.

Lumar next contends that he does not have to prove an actual disability, because he believes Monsanto regarded him as disabled under the ADA definition of disabled, *supra*. However, no "regarded as" claim is properly before the Court, because it is not administratively exhausted and is asserted for the first time in the opposition memoranda. A "claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F. Supp.2d 866, 873 (N.D. Tex. 2013) (citation omitted).

Furthermore, the fact that Monsanto prevented (and still prohibits) Lumar from using the regular stationary ladders not safety rated for his weight is <u>not</u> indicative that he was regarded as disabled. As the United States Fifth Circuit has advised with respect to obesity under the ADA, "'[a]n employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general.'" *Wilson v. Capital Transp., Corp.*, 234 F.3d 29, 2000 WL 1568200, at *1 (5th Cir. Feb. 15, 2000) (Table, Text in Westlaw) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993).

In the informative *Wilson* case, the defendant found that the obese plaintiff was unable to safely operate some, but not all, of its buses when the company found that plaintiff's girth kept the steering wheel from turning freely and prevented him from turning the steering wheel in the safe and proper manner. The defendant, however, considered the plaintiff capable at all times of driving its newer buses which had more steering room and offered to rehire him 13 months after he was placed on unpaid leave. During that time, the plaintiff reduced his weight from 449 to 356 pounds, and the defendant determined that his girth and size no longer interfered with the proper operation of the steering wheels. In affirming the grant of defendant's summary judgment, the Fifth Circuit concluded that the defendant's decision to prohibit the plaintiff from driving one type of bus was not equivalent to a belief that he had a "substantial limitation" sufficient to establish a "regarded as" claim.

As in *Wilson*, were this Court to consider Lumar's unexhausted "regarded as" claim, the same conclusion is reached. The fact that Monsanto restricted Lumar's use of the safety rated ladders and harnesses (when he was over 400 pounds) did not *per se* equate to a belief that he was

22

disabled.  Monsanto also did not treat him as disabled when he was allowed to continue to work on all other duties except the equipment for which he exceeded the safety weight rating.

In addition, the fact that Lumar was placed on temporary, <u>paid</u> leave to afford him time to lose additional weight and qualify for his Production Technician job is of no moment.  *See Wilson*, 2000 WL 1568200, at *1 (plaintiff's placement on unpaid leave to lose weight did not prove a "regarded as" claim).  The law provides that "an employer having granted the employee's request for . . . short term disability leave [does] not demonstrate by itself that the employer regarded the employee as disabled."  *Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008) (citing *Bennett v. Calabrian Chems. Corp.*, 126 F. App'x 171, 172 (5th Cir. 2005)).  As a matter of law, the facts of Lumar's case are not sufficient to demonstrate that Monsanto regarded him as disabled.  Monsanto contends that Lumar's obesity is not a disability.  It further contends that Lumar was not treated as disabled, and instead was provided unprecedented accommodations to allow him an opportunity to reach a weight level that comported with the safety requirements of his job and equipment.

Thus, for these reasons, Lumar has not set forth a *prima facie* case of discrimination under the ADA where he has not established that he has a disability.

The Court recognizes that Lumar argues that the defendant has presented no evidence of the safety/weight ratings of the stationary ladders.  However, the competent evidence before the Court establishes that the safety rated weight limit for the attached cage ladder Lumar was using in 2013 was determined to be under 400 pounds including the person and tools.[49]

---

[49]Rec. Doc. No. 41-5 (Exhibit C-3), pp. 11-12; Rec. Doc. No. 41-5 (Exhibit C-7), pp. 19-20 (notifying supervisors in 2014 that some equipment was weight rated as low as 300 pounds).  Lumar misreads this document's reference to a bolt shearing load of 3000 pounds to mean the ladder could hold 3000 pounds.  That is not the case.

The Fifth Circuit has adopted a "strict interpretation" of the adverse employment element, whereby an employment action "that does not affect job duties, compensation, or benefits" is not an adverse employment action. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quotations omitted). Adverse employment actions consist of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Id*. However, "an employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (internal citations and quotations omitted).

Lumar has not suffered this type of adverse employment action. He did not lose compensation, job assignment, or employment. Even though he complains of uncomfortable meetings and having to report his weight-loss progress, he has not presented an adverse employment action of the kind required under the ADA. *See e.g.*, *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) ("allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation"); *Searle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007) (disciplinary write-ups and alleged retaliatory micro-managing of plaintiff's performance do not constitute materially adverse employment actions); *Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 404, 407 (5th Cir. 2007) (allegations that employee was watched more closely than other employees was not actionable adverse employment action).

On the contrary, the uncontested facts establish that Monsanto maintained Lumar's position, salary, and employment despite his failure to qualify in the initial qualifying period. Instead of discharge pursuant to the normal policy, Monsanto provided additional opportunity for

Lumar to meet the weight safety range to use the equipment and harnesses and to qualify for the position when he did. When he met the safety range, he was able to use all of the equipment for which he met the weight rating.

Further, nothing argued by Lumar with respect to other employees has demonstrated a discrimination or disparate treatment of similarly situated or even non-disabled employees. For example, Schexnaydre, the white male who Lumar claimed is obese (without evidence to support the allegation) was not similarly situated. The evidence shows Schexnaydre was hired four years before Lumar and was working as a Maintenance Technician, which has different qualifying requirements, uses different equipment, and is a different department under different supervision. Lumar, nevertheless, argues that Schexnaydre is obese and is still working without ever having been asked to lose weight.

Lumar has provided no summary judgment evidence to establish any of this or Schexnaydre's actual weight now or his weight when he qualified for his position. Lumar's unsupported argument is not sufficient to create a question of material fact or avoid summary judgment. The same is true of the two other employees, Stamps (African American) and Matherne (race not indicated), discussed with Lumar in his deposition.

Furthermore, "[p]lacement on paid leave is not an adverse employment action . . . without an additional showing of loss to Plaintiff's compensation, duties, or benefits." *Butler v. Exxon Mobil Corp.*, 838 F. Supp.2d 473, 491 (M.D. La. 2012) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007); *Watkins v. Paulsen*, 332 F. App'x 958, 960 (5th Cir. 2009); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000)). As the competent evidence and undisputed facts show, Lumar did not suffer any such adversity or loss when he was placed on temporary paid

leave to focus on his desired weight loss (a goal he set before he was hired) and given a second opportunity to qualify for his chosen position.

For these reasons, Lumar has failed to make a *prima facie* showing of a violation under the ADA to shift the burden of proof to the defendant.

**VI.** **Title VII Discrimination Claim**

**1.** **No *Prima Facie* Case**

Monsanto contends that Lumar cannot meet his burden of establishing a Prima Facie case of race discrimination or pretext. Monsanto further contends that even if Lumar could show that he has a physical impairment, he cannot prove that he suffered an adverse employment action or that he was treated less favorably than non-African American employees.

Lumar alleges that he was discriminated against because of his African-American race. Despite this, Lumar claims that he was treated less favorably than <u>all</u> other employees who were not required to lose weight to fall under 400 pounds.

Under Title VII, employers are prohibited from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual because of such individual's race, or national origin." 42 U.S.C. § 2000e-2(a)(1). As discussed previously, in this type of case, the Court analyzes the plaintiff's discrimination claim using a three-part burden shifting analysis set forth in *McDonnell-Douglas*. *See Swierkiewicz*, 534 U.S. at 510-11; *Powell*, 788 F.2d at 285; *Byers v. Dallas Morning News*, 209 F.3d 419, 425-26 (5th Cir. 2000). As a reminder, for plaintiff to establish a *prima facie* case of race discrimination, he must establish that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, . . . that other

similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004); *Urbano v. Continental Airlines Inc.*, 138 F.3d 204, 206 (5th Cir. 1998); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

As with its ADA counterpart, if the plaintiff successfully establishes a *prima facie* case of race discrimination, the burden then shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for its action. *Byers*, 209 F.3d at 425-26. At the summary judgment stage, the defendant's burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). Finally, if the defendant meets its burden, the burden shifts back to the plaintiff to demonstrate that defendant's non-discriminatory action was a mere pretext for discrimination. *Id*.

The parties do not contest that Lumar is an African-American, which is a protected class for purposes of Title VII, and was functionally capable of doing the duties of a Production Technician in the GI Dry Unloading department. However, for the extensive reasons already addressed under the ADA claim, Lumar has failed to establish that there was an adverse employment action.

Under Title VII, adverse employment actions generally include <u>only</u> ultimate employment decisions such as hiring, granting/denying leave, discharging, promoting, or compensating. *McCoy*, 492 F.3d at 551. For purposes of reference, Lumar did not lose compensation, job assignment, or employment. Lumar complains only of the uncomfortable meetings and weight-loss progress reporting which are not at the level of adverse employment actions. *See*, *King*, 294 F. App'x at 85; *Grice*, 216 F. App'x 401 at 404 & 407.

As for the third consideration, Lumar was not replaced or displaced from his position by anyone of any racial background. Lumar was allowed to and continues to work in his preferred position as a Senior Production Technician. In addition, he has not identified anyone outside or within his protected class that received more favorable treatment "under nearly identical circumstances" to his. *See Carr v. Sanderson Farms, Inc.*, 665 F. App'x 335, 337 (5th Cir. 2016) (citing *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015)).

Lumar's own deposition testimony where he was emphatic that he believed he was treated differently than all "[e]mployees, period," without distinction of race. As with the ADA claim, Lumar has failed to establish a *prima facie* case of race discrimination under Title VII and defendant is entitled to summary judgment as a matter of law.

## VII.    ADA/Title VII Hostile Work Environment Claim

Monsanto contends further that even if Lumar could establish that he was disabled under the ADA, no reasonable jury could find that he was subjected to harassment based on his purported disability. Monsanto further contends that there is no evidence that the conditions of employment were altered or that there was a severe and pervasive harassment resulting in an abusive environment.

Lumar asserts that he was harassed because of his race (African-American) and disability (obesity) and subjected to a hostile work environment when he was required to meet monthly with Monsanto supervisors/employees and report his weight to the nurse. He, therefore contends that there are material questions of fact that exist precluding a grant of summary judgment dismissal.

To establish a hostile work environment claim under both the ADA and Title VII, a plaintiff must prove: (1) he belongs to a protected group; (2) he was subjected to unwelcome

harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001) (extending Title VII hostile work environment jurisprudence to disability-based harassment claims under the ADA); *Pattons v. Jacobs Eng. Group, Inc.*, 874 F.3d 437, 445 (5th Cir. 2017). "Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

The United States Fifth Circuit has made clear that "[t]he legal standard for workplace harassment in this circuit is . . . high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). In addition, comments and actions that may be subjectively humiliating or simply relate to termination, do not tend to support a finding of harassment. *Molden v. East Baton Rouge Par. Sch. Bd.*, 715 F. App'x 310, 317-18 (5th Cir. 2017) (citing *Credeur v. La. through the Office of Attorney General*, 860 F.3d 785, 788 (5th Cir. 2017)).

In determining whether the work environment is hostile, the federal courts examine the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez*, 670 F.3d at 651 (quoting *Ramsey*, 286 F.3d at 268). The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the

victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Here, Lumar has presented only conclusory allegations (and no evidence) in support of his hostile work environment claim by simply repeating the same allegations on which he relies on for the discrimination claims. This is insufficient to meet his burden of making a *prima facie* case. *See Diggs v. Potter*, 700 F. Supp.2d 20, 52 (D.D.C. 2010) (rejecting plaintiff's hostile work environment claim where he did nothing more than reassert his discrimination and disparate treatment claims asserting these same actions constituted a hostile work environment).

Lumar has pointed to no document or other evidence in the record which, viewed objectively, establishes the *prima facie* existence of a hostile work environment under these factors. *See*, *Jones v. Bush*, 160 F. Supp.3d 325, 352-53 (D.D.C. 2016); *Morgan v. Vilsack*, 715 F. Supp.2d 168, 184 (D.D.C. 2010) ("As severe as the subjective hostility appeared to plaintiff during [her] tenure . . ., unless [she] can offer concrete proof of objectively severe and consistent hostile actions, [her] claim cannot be sustained.").

Lumar never lodged any complaints with Monsanto that he felt harassed or otherwise discriminated against to afford Monsanto or any of its employees an opportunity to require or take corrective action. Lumar has not established that the meetings or the weight reporting were objectively harassing or abusive or altered his work environment such that it interfered with his work performance.

The requirement that he attend the meetings and send occasional emails to the nurse over the course of a couple of months simply is not sufficiently severe or abusive to state a hostile work environment claim. *See*, *e.g.*, *Corbin v. Southwest Airlines, Inc.*, No. 17-2813, 2018 WL 4901155,

at *16 (S.D. Tex. Oct. 9, 2018) (no hostile work environment after employee felt she was asked by her supervisor to attend meeting only to intimidate her or scare her with termination where meeting did not affect her employment); *Hendricks v. Boy Scouts of Am.*, No. 15-0304, 2015 WL 5459612, at *3 (N.D. Tex. Sep. 16, 2015) (no hostile work environment where employer made employee attend daily meetings to review his work and gave him a negative evaluation on his annual review). As the Supreme Court has guided, "conduct must be extreme to amount to a change in terms and conditions of employment" to establish a hostile work environment claim. *Faragher*, 524 U.S. at 788. Lumar has not met this burden and has not presented a *prima facie* case of hostile work environment based on his race or obesity.

Therefore, the Court finds that Lumar has failed to make a *prima facie* showing of a hostile work environment based on his race or disability and the defendant is entitled to judgment as a matter of law.

Accordingly,

## VIII.  <u>Conclusion</u>

**IT IS ORDERED** that defendant, Monsanto Company's **Motion for Summary Judgment (Rec. Doc. No. 41)** is **GRANTED**, and the plaintiff Dwayne Lumar's claims of race discrimination or harassment under Title VII, claims of disability discrimination or harassment under the ADA, and hostile work environment claims related to Title VII and the ADA are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this <u>13th</u> day of June, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**